## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**ARLINGTON JAMISON**                              **CIVIL ACTION**

**VERSUS**                                         **NO: 22-206**

**JOSEPH P. LOPINTO, III**                         **SECTION: "H"**


## ORDER AND REASONS

Before the Court is Defendant Joseph P. Lopinto, III's Motion to Strike (Doc. 30) and Motion for Judgment on the Pleadings (Doc. 28). For the following reasons, Defendant's Motions are **GRANTED**.


## BACKGROUND

This case arises out of an interaction between Plaintiff Arlington Jamison and members of the Jefferson Parish Sheriff's Office ("JPSO"). On January 30, 2021, Plaintiff and a friend witnessed an altercation across the street from where they were standing in Metairie, Louisiana. Thereafter, several JPSO vehicles arrived. After hearing commentary by Plaintiff and his friend, Deputy Thomas Hutchinson Manning instructed them to remain quiet. Another deputy approached Plaintiff and his friend and asked Plaintiff for identification, which Plaintiff refused to provide. The deputy then indicated that he was arresting Plaintiff for his refusal to provide his identification as requested.

Additional deputies surrounded Plaintiff. Plaintiff, observing a deputy moving his hands toward his firearm as he approached, felt uneasy and fled.

As Plaintiff fled, Deputy Manning deployed his TASER at Plaintiff's back without warning. After being struck by the weapon's electrical charge, Plaintiff fell to the ground and landed on his elbows. The deputies surrounded Plaintiff who alleges that they continued to use excessive force against him while placing him under arrest. Plaintiff further alleges that during his arrest for a public intoxication charge, his car was unlawfully searched, he was not read his *Miranda* rights, and he was not administered a breathalyzer test.

On January 30, 2022, Plaintiff filed suit in this Court against Joseph P. Lopinto, III in his official capacity as Sheriff of JPSO and JPSO under 42 U.S.C. § 1983 for failure to train and supervise. Plaintiff also brought 42 U.S.C. § 1983 excessive force claims and Louisiana state law claims for assault, battery, negligence and intentional infliction of emotional distress against multiple JPSO deputies.[1] On April 24, 2025, the Court dismissed all defendants but Sheriff Lopinto because they had not been served in the three years since the suit was filed.[2] The only claim remaining is Plaintiff's § 1983 claim against Defendant Lopinto. Defendant Lopinto has moved for Judgment on the Pleadings (Doc. 28), to which Plaintiff filed his Opposition (Doc. 29). Defendant Lopinto seeks to strike Plaintiff's Opposition as untimely (Doc. 30). This Court will consider both motions in turn.

## LEGAL STANDARD

Rule 12(c) provides that a party may move for judgment on the pleadings, after pleadings closed but early enough not to delay trial. The standard for determining a Rule 12(c) motion is the same as a Rule 12(b)(6) motion to dismiss. To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead

---

[1] Doc. 1.
[2] Doc. 27.

enough facts "to state a claim for relief that is plausible on its face." A claim is "plausible on its face" when the pleaded facts allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor." The court need not, however, accept as true legal conclusions couched as factual allegations. To be legally sufficient, a complaint must establish more than a "sheer possibility" that the plaintiff's claims are true. If it is apparent from the face of the complaint that an insurmountable bar to relief exists and the plaintiff is not entitled to relief, the court must dismiss the claim. The court's review is limited to the complaint and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.

## LAW AND ANALYSIS

### 1. Defendant's Motion to Strike

Defendant asks this Court to strike Plaintiff's Memorandum in Opposition to Defendants' Rule 12(C) Motion for Judgment on the Pleadings ("Opposition").[3] Defendant argues that Plaintiff's Opposition was not timely filed and must be stricken from the record. This Court agrees.

To be timely, Plaintiff's Opposition must have been filed and served, "no later than eight days before the noticed submission date."[4] Defendant's Motion for Judgment on the Pleadings was set for submission on June 4, 2025, making Plaintiff's Opposition due on May 27, 2025.[5] Plaintiff filed his Opposition on August 7, 2025, which is more than two months after the deadline to file his

---

[3] Doc. 29.
[4] L.R. 7.5.
[5] Doc. 28-2.

Opposition.[6] Plaintiff did not request leave to file his Opposition past the submission date or request an extension.[7] Thus, Plaintiff's Opposition is untimely in violation of Local Rules 7.5 and 7.2.

While the Court may use its discretion to permit untimely filings upon a party's motion, Plaintiff has neither moved for leave to file his untimely Opposition, nor has he opposed the present Motion to Strike.[8] Plaintiff has failed to demonstrate good cause for his late filing, and Plaintiff's Opposition to Defendant's Motion for Judgment on the Pleadings therefore shall be stricken from the record.[9]

## 2. Defendant's Motion for Judgment on the Pleadings

Having granted Defendant's Motion to Strike Plaintiff's Opposition, the Court turns to Defendant's unopposed Motion for Judgment on the Pleadings.

---

[6] Doc. 29.

[7] L.R. 7.2 ("The noticed [submission] date is the date the motion is deemed submitted to the court for decision and after which no further briefing will be allowed, except with prior leave of court.").

[8] FED. R. CIV. P. 6(b)(1) ("When an act may or must be done within a specified time, the court may, for good cause, extend the time on motion made after the time has expired if the party failed to act because of excusable neglect.").

[9] The Court notes that in striking Plaintiff's Opposition, Plaintiff's Attachments to his Opposition are stricken as well. Plaintiff's Attachments to his Opposition include a Memorandum purporting to be in support of Plaintiff's Motion to Reconsider or Appeal (Doc. 29-1). No such motion has been filed, rendering Plaintiff's requests procedurally improper. FED. R. CIV. P. 7(b)(1) ("A request for a court order must be made by motion."); L.R. 7.4 ("All contested motions must be accompanied by separate memoranda which must contain a concise statement of reasons supporting the motion and citations of authorities."). In his Memorandum, Plaintiff asks this Court to reconsider, or permit appeal for, its April 24, 2025, Order dismissing, without prejudice, Defendants C. Fritts, S. Thompson, C. Eskine, T. Young, E. Hosli, Jefferson Parish Sheriff's Office, and Thomas Hutchison Manning (Doc. 27). Plaintiff is directed to file a proper motion regarding the relief referenced in his Memorandum for consideration by this Court. Plaintiff later filed a Notice of Appeal on August 14, 2025 (Doc. 32) regarding this Court's dismissal of Defendants C. Fritts, S. Thompson, C. Eskine, T. Young, E. Hosli, Jefferson Parish Sheriff's Office, and Thomas Hutchison Manning (Doc. 27). While not properly raised, the Court notes that an order "that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time" before final judgment as to all claims and parties unless the district court certifies that there is "no just reason for delay" FED. R. CIV. P. 54(b). This Court has not made such a certification.

The Court may not simply grant the instant motion as unopposed. The Fifth Circuit approaches the automatic grant of dispositive motions with considerable aversion.[10] As such, the Court will consider Defendant's argument below.

In his Complaint, Plaintiff seeks to hold Defendant Lopinto liable in his official capacity as Sheriff of JPSO in violation of 42 U.S.C. § 1983. Plaintiff alleges that "defendant deputies were acting under color of law and acting pursuant to customs, practices and policies of the Jefferson Paris Sheriff's Office in regards to the excessive use of force authorized and/or ratified by policymakers, specifically [Defendant Lopinto]."[11] Plaintiff asserts that by adopting these "customs, practice[s] and policies the Jefferson Parish Sheriff's Office acted with deliberate indifference" towards Plaintiff's Fourth Amendment rights.[12] Plaintiff further alleges that Defendant Lopinto and the JPSO failed to "properly train and supervise its deputies" thereby causing the violations of Plaintiff's constitutional rights, and that "the actions of Defendants [JPSO and Lopinto] represent a tacit approval" of said violations.[13]

In the instant Motion, Defendant avers that Plaintiff fails to allege a single fact regarding the *Monell* claim against him, and instead, provides only "formulaic recitations of elements of causes of actions, as well as legal conclusions couched as fact."[14]

Title 42, United States Code, Section 1983 authorizes suits for damages against:

---

[10] *See, e.g.*, Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc., 702 F.3d 794, 806 (5th Cir. 2012); Johnson v. Pettiford, 442 F.3d 917, 918 (5th Cir. 2006) (per curiam); John v. State of Louisiana (Bd. of Trs. for State Colls. and Univs.), 757 F.2d 698, 709 (5th Cir. 1985).
[11] Doc. 1 at ¶ 27.
[12] *Id.* at ¶ 28.
[13] *Id.* at ¶¶ 29–30.
[14] Doc. 28-1 at 1.

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.

"In *Monell*, the Supreme Court held that a governmental entity is liable under § 1983 only when the entity itself caused the constitutional violation at issue."[15] "Municipalities, which include counties and certain other local governmental bodies, are 'persons' under Section 1983."[16] To state an official capacity claim against a municipality, Plaintiff must allege that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right."[17]

An "[o]fficial policy is ordinarily contained in duly promulgated policy statements, ordinances or regulations."[18] Such an official policy is promoted "by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policymaking authority."[19] When determining *Monell* liability, "[a]n official policy may also be a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy and practically ha[s] the force of law."[20]

---

[15] Moses v. City of New Orleans, No. 24-1768, 2025 WL 816296, at *5 (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).
[16] Daves v. Dallas Cnty., 22 F.4th 522, 532 (5th Cir. 2022).
[17] Peterson v. City of Fort Worth, 588 F.3d 838, 847 (5th Cir. 2009).
[18] Piotrowski v. City of Houston, 237 F.3d 567, 579 (5th Cir. 2001).
[19] York v. Welch, No. 20-40580, 2024 WL 775179, at *3 (5th Cir. Feb. 26, 2024) (quotation and alteration omitted).
[20] *Id.*

Showing that such a custom, or "pattern of abuses that transcends the error made in a single case," was in place "requires similarity and specificity; prior indications cannot simply be for any and all bad or unwise acts, but rather must point to the specific violation in question."[21] "The pattern of similar and specific acts also 'must be comprised of sufficiently numerous prior incidents rather than merely isolated instances.'"[22] Further, "[a] policymaker with policy-making authority must have actual or constructive knowledge of the custom."[23]

"Plausibly to plead that a practice is so persistent and widespread as to practically have the force of law, a plaintiff must do more than describe the incident that gave rise to his injury."[24] "A plaintiff's description of the challenged practice cannot be conclusory; it must contain specific facts."[25] "[T]hose specific facts must be similar to the case at hand: 'Prior indications cannot simply be for any and all bad or unwise acts, but rather must point to the specific violation in question.'"[26]

"A claim of a violation of section 1983 pursuant to . . . a persistent, widespread practice of city officials or employers—may in an appropriate case also encompass allegations that a policymaker failed to act affirmatively, including a failure adequately to train a subordinate."[27] To find *Monell* liability, such a custom "must be either unconstitutional or adopted with deliberate indifference to the known or obvious fact that such constitutional

---

[21] Benfer v. City of Baytown, 120 F.4th 1272, 1286 (5th Cir. 2024)

[22] *Moses*, 2025 WL 816296, at *6 (quoting Benfer v. City of Baytown, 120 F.4th 1272, 1286 (5th Cir. 2024)).

[23] Flanks v. City of New Orleans, No. CV 23-6897, 2025 WL 660037, at *8 (E.D. La. Feb. 28, 2025) (citing Webster v. City of Houston, 735 F.2d 838, 842 (5th Cir. 1984)).

[24] Johnson v. Harris Cnty., 83 F.4th 941, 946 (5th Cir. 2023) (internal quotation omitted).

[25] *Id.* (internal quotation removed).

[26] *Id.* (quoting Martinez v. Nueces Cnty., 71 F.4th 385, 389 (5th Cir. 2023) (cleaned up).

[27] Burge v. St. Tammany Parish, 336 F.3d 363, 369 (5th Cir. 2003).

violations would result."[28] "Deliberate indifference is established by showing 'a pattern of similar violations arising from a policy so clearly inadequate as to be obviously likely to result in a constitutional violation.'"[29]

"In *Connick v. Thompson*, the Supreme Court recognized that '[i]n limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of §1983.'"[30] "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."[31] As such, "[t]o satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'"[32] "Only then 'can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983.'"[33] "Because '[d]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action[,]' the governmental entity may be deemed deliberately indifferently[*sic*] only when the 'policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights [and the policymakers] choose to retain that program.'"[34] "The city's 'policy of inaction' in light of notice that its program will cause constitutional violations is the functional

---

[28] Blanchard-Daigle v. Geers, 802 F. App'x 113, 116 (5th Cir. 2020) (quotation omitted).
[29] *Moses*, 2025 WL 816296, at *6 (quoting Covington v. City of Madisonville, 812 F. App'x 219, 225 (5th Cir. 2020)). "Mere negligence, even gross negligence, is not sufficient to establish deliberate indifference." *Covington*, 812 F. App'x at 225.
[30] *Moses*, 2025 WL 816296, at *6 (quoting *Connick*, 563 U.S. at 61 (2011)).
[31] *Connick*, 563 U.S. at 61.
[32] *Id.* (quoting City of Canton v. Harris, 489 U.S. 378, 388 (1989)).
[33] *Id.* (quoting *Canton,* 489 U.S. at 388)).
[34] *Moses*, 2025 WL 816296, at *6 (quoting *Connick*, 563 U.S. at 61).

equivalent of a decision by the city itself to violate the Constitution."[35] "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train."[36] Also, "[p]olicymakers' continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action – the deliberate indifference – necessary to trigger municipal liability."[37]

Considering the above, the Court finds that Plaintiff has failed to adequately plead his § 1983 failure to train and supervise claim against Defendant Lopinto. While Plaintiff names the essential elements of a *Monell* claim, Plaintiff does not plead any facts about what JPSO policy or custom caused the alleged constitutional violation or identify what specific training and supervision, or lack thereof, led to the violation. In other cases, where plaintiffs do not explicitly refer to a written policy that led to their § 1983 claims, the plaintiffs have been required to cite a substantial number of similar violations to prove a custom exists.[38] Here, Plaintiff pleads none. Further, Plaintiff does not plead facts from which one could infer Defendant Lopinto had actual or constructive knowledge of any misconduct within the JPSO other than by alleging that his "actions . . . represent a tacit approval" of the deputies' actions.[39] As such, the Court is unable to draw a reasonable inference that the

---

[35] *Id.* (quoting *Connick*, 563 U.S. at 61–62).

[36] *Id.* (quoting *Connick*, 563 U.S. at 62).

[37] *Id.* (quoting *Connick*, 563 U.S. at 62).

[38] See *Moses*, 2025 WL 816296 (finding that a complaint citing a number of like cases where the same alleged constitutional violation occurred, as well as investigations by independent agencies, "barely" survived a motion to dismiss); *Flanks*, 2025 WL 660037(finding that 22 like cases within an 11 year period were sufficient to indicate a plausible custom); Davis v. City of New Orleans, at al., No. 24-1870, Doc. 33 (denying a motion to dismiss for failure to state a claim where the complaint cited 10 instances of like unconstitutional conduct and repeated failures to correct such conduct).

[39] Doc. 1 at ¶ 30.

alleged harm to Plaintiff was caused by policy, custom, or patterns of misconduct rather than being an isolated incident.

Further Plaintiff's Complaint raises a *respondeat superior* claim against Defendants Lopinto and JPSO by alleging that Defendants Thomas Hutchison Manning, C. Fritts, S. Thompson, C. Eskine, T. Young, and E. Hosli, were "acting in the course and scope of their employment" during the alleged misconduct.[40] This claim still does not entitle Plaintiff to relief. The Supreme Court has "consistently refused to hold municipalities liable under a theory of *respondeat superior*," instead requiring "a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury."[41] As § 1983 precludes municipal liability on a *respondeat superior* theory, § 1983 forms an insurmountable bar to relief for Plaintiff's *respondeat superior* claim.[42]

Even if the Court were to consider Plaintiff's untimely Opposition, the Court finds that the Opposition does not point to facts plead in his Complaint that support a claim for relief that is plausible on its face. Accordingly, Plaintiff's § 1983 claims against Defendant Lopinto must be dismissed.

## CONCLUSION

For the foregoing reasons;

**IT IS ORDERED** that Defendant's Motion to Strike Plaintiff's Opposition to Defendant's Motion for Judgment on the Pleadings is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Judgment on the Pleadings is **GRANTED**.

---

[40] *Id.* at ¶ 27.
[41] Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997).
[42] *Monell*, 436 U.S. at 691.

**IT IS FURTHER ORDERED** that Plaintiff's § 1983 claims against Defendant Joseph P. Lopinto, III in his official capacity are **DISMISSED WITHOUT PREJUDICE**. Plaintiff shall amend his Petition within 21 days of this Order to the extent he can remedy the deficiencies identified herein.

New Orleans, Louisiana this 3rd day of September, 2025

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

11